# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-3625

CODY MIYLER,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF EAST GALESBURG,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 1228—**Joe Billy McDade,** *Judge.*

ARGUED DECEMBER 3, 2007—DECIDED JANUARY 9, 2008

Before BAUER, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* With his mother ensconced as the president of the Village, and an ordinance that provided he could only be removed from office if the president agreed, Cody Miyler must have been shocked when he was discharged from his position as the Chief of Police of tiny East Galesburg,[1] Illinois, without his mother's consent. After this came to pass, Miyler sued the Village under 42 U.S.C. § 1983, claiming a violation of his

---

[1] East Galesburg's population is around 900. It's not to be confused with its more robust neighbor to the west, just plain old Galesburg, which has over 33,000 inhabitants.

due process rights under the Fourteenth Amendment to the United States Constitution. The district court granted the Village's motion for summary judgment and Miyler appeals.

In January 2001, Miyler was appointed to the position of Chief of Police of the Village of East Galesburg. His pay was set at the surprisingly low rate of about $9 per hour. Two and a half years later, the Village Board of Trustees, by a two-thirds vote, voted to remove Miyler from office. The board claimed it was troubled by various allegations of misconduct by Miyler, such as his providing beer to some underage boys, using a local brickyard for a firing range, and being ticketed for riding a motorcycle without a valid license, a "violation" to which he entered a guilty plea. Miyler's employment was actually terminated without a hearing two weeks later.

As we said, at the time of the termination of his employment, Miyler's mother was president of the Village. It was Miyler's understanding that his employment could not be terminated unless his mother fired him. Given the Village ordinances, we can understand the basis for Miyler's belief about what would have to happen before he could be fired. But in this civil rights case, it doesn't matter. Nothing in the Village ordinances or the state statutes gives him a protectible property interest in his position, nor does he have an employment contract with the Village. In short, he was an at-will employee.

For Miyler to have a *constitutionally protected* property right in continued employment as the police chief of the Village, he had to have a legitimate claim of entitlement to continue in the job. Property interests are created and defined by an independent source, such as state law or a contract. *Bd. of Regents of State Colls. v. Roth*, 408

U.S. 564 (1972). Under Illinois law, public employees do not have property rights in employment which trigger due-process protections. *Levin v. Civil Serv. Comm'n of Cook County*, 52 Ill. 2d 516, 288 N.E.2d 97 (1972).

Nevertheless, Miyler argues that state law, 65 ILCS 5/3.1-35-10, gives him a property interest. That section states that the mayor or president of a municipality may remove any officer appointed by a mayor or president. The statute then sets out procedures for removal. Miyler argues that a similar statute was found to be sufficient to overcome the presumption of at-will employment in *Summers v. Village of Durand*, 267 Ill. App. 3d 767, 643 N.E.2d 272 (2nd Dist. 1994).

We find *Summers* a bit puzzling. But one thing is clear: it is not relevant to Miyler's case. *Summers* is a breach of contract action, not a civil rights case, and involves the firing of the chief of police of the Village of Durand. Summers' employment contract, partly in writing, partly oral, did not specify a definite term of employment. His employment was terminated without the filing of a formal charge, as the statute requires. In his breach of contract action, Summers contended that the Illinois Municipal Code provided him with procedural protections, which he did not receive. The court said that the "presumption that an employment contract is terminable at will can be overcome by an applicable statutory provision that demonstrates a contrary intent" and that the Code demonstrated such an intent. The court continued by saying that the Code became part of Summers' employment contract and so he could only be fired pursuant to a formal charge presented to the board. Because no charge was filed, Summers' complaint stated a claim for breach of contract. As we read the case, it stands for the proposition that, in a claim based on contract, a plaintiff can claim that the failure to provide procedural protections is a breach.

That is a far cry from saying that the statute establishes a property interest in employment for purposes of the Fourteenth Amendment. Procedural guarantees do not establish a property interest protected under the Fourteenth Amendment's Due Process Clause. In order to create a property interest, a statute or ordinance must provide "some substantive criteria limiting the state's discretion," as for instance in a requirement that employees can only be fired "for cause." A statute which merely provides procedures to be followed does not include a substantive right. *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989); *see also Bishop v. Wood*, 426 U.S. 341 (1976).

The Village ordinances are no more help to Miylar than are the statutes. Ordinance 1-5-12(J) provides for the termination of "[a]ny officer appointed by the President and Board of Trustees," and Section 6-1-2(B) provides for removal of the chief of police by the "President, with the advice and consent of the Board of Trustees." The police chief can be removed when "the corporate authorities determine that the best interests of the Village require such removal." It seems clear that the latter section, applying specifically to the chief of police, is the relevant ordinance. And it provides for removal by the president of the Village, not the board. Contrary to the ordinances, Miyler was removed by the board, not his mother, the president.

But despite the fact that his removal may have been contrary to the ordinance, it does not follow that there has been a violation of the Due Process Clause. Miyler simply cannot establish a property interest in continuing to hold on to his position as the Village police chief. That he may have a claim for some sort of relief in state court is not a concern with which we can deal.

Accordingly, the judgment of the district court is AFFIRMED.

No. 06-3625 5

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*